IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DWIGHT CARTER and<br>MICKEY R. COLEMAN | : | |
| Plaintiffs | : | |
| v | : | Civil Action No. AMD-04-3956 |
| MELANIE PEREIRA, *et al.* | : | |
| Defendants | : | |

...o0o...

MEMORANDUM

This civil rights action, filed on December 16, 2004, arises out of the alleged inequitable treatment of Muslim inmates incarcerated at the Howard County Detention Center (HCDC). Plaintiffs are Muslims who were incarcerated at HCDC at the time this complaint was filed.[1] Now pending is defendants' motion to dismiss or for summary judgment. Paper No. 8. Though both plaintiffs were informed of their right to respond to the dispositive motion, and of the consequences of failing to so respond, only plaintiff Coleman has filed an opposition to the motion. Paper No. 10. Defendants have also filed a reply to Coleman's opposition. Paper No. 14. Upon review of the papers filed this court finds it unnecessary to hold a hearing in this matter. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth below, the defendants' motion, construed as a motion for summary judgment, shall be granted.

*Background*

Plaintiffs claim that practices at HCDC favor inmates who are Christian and Catholic over those who are adherents to the Islamic faith. Plaintiffs explain that they were not given a Qu'ran until

---

[1] Currently, plaintiff Coleman is incarcerated at the Frederick County Detention Center.

two weeks after it was requested, while a Christian inmate was provided with a Bible within one day. Paper No. 5. They claim that Christians and Catholics are offered seven worship services per week and are not required to sign up in advance to attend services, while Muslim inmates are not provided with any congregate services. *Id*. In addition, plaintiffs claim the food services provided during Ramadan were inadequate, and that the breakfast meal provided to plaintiffs during Ramadan was much smaller than the breakfast meal provided to the rest of the population. They further claim that requests for bagged lunches to replace the meal missed during the day was refused by HCDC staff.

Defendants contend that services for the Islamic inmate population at HCDC are provided to the best of their abilities. They assert that they must rely on volunteer Imams to come to the facility and conduct religious services. Paper No. 8 at p. 3. If there are not four or more inmates signed up to attend a service, the volunteer Imams do not come to HCDC to conduct religious services.[2] *Id*. Defendants further contend that at the time plaintiffs were confined at HCDC, the population of Islamic inmates was approximately 3% of the total population, i.e., from five to nine inmates[3]. *Id*. at Ex. 1. Defendants explain that HCDC is a short-term facility that houses pre-trial detainees and inmates serving not more than an 18 months sentence; the transient nature of the

---

[2]In response to plaintiff Carter's administrative grievance regarding congregate services for Muslims, he was told that there had to be at least four people signed up to attend an Islamic service before one would be scheduled. Paper No. 5. Carter claims that there was no sign up sheet provided in the housing unit for Islamic inmates to indicate their desire to attend worship services. *Id*. The court must infer that inmates desiring to attend services will effectively communicate their desires to do so to the warden.

[3]Plaintiffs claim that HCDC houses immigration detainees, the majority of whom are Muslim. Papers No. 5 and 6. There is no probative evidence of the assertion that a majority of the inmate population is Muslim.

inmate population exacerbates the logistical problems faced when trying to provide access to religious services of every type to all inmates. *Id*. As a consequence, defendants admit that at any given time there may not be certain religious services available for some portion of the inmate population. *Id*.

In order to provide inmates with access to religious services, defendants employ the volunteer chaplain services of Christian Jail Ministry, Inc. (CJM), which provides administrative support, training, and preliminary screening for all religious programs at HCDC. *Id*. Chaplain Nichols is the head of CJM at HCDC and, in that capacity, coordinates all religious services. *Id*. Defendants argue that they "cannot, without excessive entanglement in religion, guarantee that the outcome is strict 'equality' among religious groups." *Id*. Rather, defendants assert that they provide "access to religious services on a non-discriminatory basis." *Id*.

*Standard of Review*

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406,

414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256.

*Analysis*

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered, however. Prison restrictions having an impact on the free exercise of religion, but are related to legitimate penological objectives, do not run afoul of the constitution. *Turner v. Safely*, 482 U.S. 78, 89–91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relationship between the asserted governmental interest and the regulation in question. In addition, this court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation

4

would be less restrictive.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The Act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000).

The claims asserted by plaintiffs in this case concern the lack of opportunity to practice their Islamic faith in respect to (1) the delay in providing Qu'rans; (2) an absence of regular worship services for Muslims; and (3) their perception of inequities between the treatment of Muslim and Christian inmates. As a matter of law, a delay of two weeks in response to a request for a Qu'ran is not a deprivation of an opportunity to practice the Islamic faith. This is particularly true in the instant case, where a copy of the Qu'ran was available in the inmate library. Paper No. 8 at Ex. 1, p. 3. To the extent that plaintiffs claim that the size of their Ramadan breakfast meals constitutes a penalty for the practice of their faith, the claim is without merit. Defendants accommodated plaintiffs' religious practice by providing the meals at the proper time of day.[4] To the extent that the meal was not the same as that provided to other inmates, defendants have explained that the difference was entirely due to the earlier preparation time and that the meals meet nutritional standards. Paper No. 8 at Ex. 3, p. 2.

Ramadan involves fasting between sunrise and sundown. Plaintiffs' claim that they should

---

[4]The breakfast meal must be served before sunrise during Ramadan.

have received bagged portions of the midday meal skipped during the fast. To have provided this meal would seemingly render meaningless the intent of fasting. As a matter of law, defendants did not run afoul of the Constitution by honoring the spirit of the Ramadan fast by not enlarging the evening meal. This claim will therefore be denied.

More troubling are the allegations raised concerning the lack of services provided for Islamic inmates. Defendants have provided this court with sworn affidavits stating that worship services for Muslim inmates frequently are not scheduled due to lack of interest and difficulty in locating volunteers willing to conduct prayer services. Paper No. 8 at Ex. 1 and 2. Despite the lack of congregate services, however, plaintiffs were in no way prohibited from receiving clergy visits for purposes of religious education and counseling. *Id*. at Ex. 1. In light of the transitory nature of the inmate population, the efforts by defendants to locate volunteers to provide congregate worship services for Muslim inmates, and the temporary delays cited by plaintiffs as probative of intentional discrimination, there is no evidence in this case that a substantial burden has been placed on plaintiffs' ability to practice their chosen faith, or that defendants have intentionally discriminated against Muslim inmates. Accordingly, defendants' motion for summary judgment shall be granted by separate order which follows.

Filed: August 8, 2005                              /s/
                                                    Andre M. Davis
                                                    United States District Judge